IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AMANDA RENE NICHOLSON,

    Plaintiff,

 V.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.

Case No. 1:13-cv-02306-AA
OPINION AND ORDER

---

Nancy J. Meserow
Law Office of Nancy J. Meserow
7540 S.W. 51st Ave.
Portland, OR 92219
 Attorney for plaintiff

Billy J. Williams
Interim United States Attorney
District of Oregon
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97201-2902

L. Jamala Edwards
Special Assistant United States Attorney
Office of the General Counsel

Page 1 - OPINION AND ORDER

Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-3749
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Amanda Rene Nicholson brings this action for judicial review of a final decision for the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons below, this case is reversed and remanded for immediate payments of benefits.

## PROCEDURAL BACKGROUND

On April 14, 2010, plaintiff filed her application for SSI. Tr. 169. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 112. On June 1, 2012, an ALJ hearing was held before the Honorable Joel B. Martinez; plaintiff was represented by counsel and testified therein. The ALJ also heard testimony from a vocational expert ("VE"). Tr. 31-74. The ALJ issued a decision on July 16, 2012 finding plaintiff not disabled within the meaning of the Act. Tr. 16-24. After the Appeals Council declined review, plaintiff filed a complaint in this court. Tr. 12.

## STATEMENT OF FACTS

Born on May 17, 1981, plaintiff was 27 years old on the

Page 2 - OPINION AND ORDER

alleged onset date of disability and 31 years old at the time of the hearing. Tr. 23, 31, 169. Plaintiff dropped out of high school upon completion of the eleventh grade and never attained a GED. Tr. 19, 22. She previously worked as an assembly-line quality inspector, dishwasher, and care giver. Tr. 192. In her application, plaintiff alleged disability beginning on December 7, 2008 due to bipolar disorder, depression, attention-deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), epilepsy, headaches, and back pain. Tr. 190. Plaintiff further alleges disability due to borderline intellectual functioning, mental retardation, learning disability, severe anxiety disorder, and carpal tunnel syndrome ("CTS"). Pl.'s Opening Br. 10-16.

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the recrod. Hammock v. Bowen, 879 F.2d 498, 501 (th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions. Martinez v. Heckler, 807 F. 2d 771,

Page 3 - OPINION AND ORDER

772 (th Cir. 1986).

The initial burden of proof rests upon the plaintiff to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a plaintiff is engaged in "substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the plaintiff is not disabled.

At step two, the Commissioner determines whether the plaintiff has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the plaintiff is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the plaintiff is conclusively presumed disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner determines whether the plaintiff can still perform "past relevant work." 20 C.F.R. § 416.920(e). If plaintiff can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the plaintiff can perform other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e)&(f). If the Commissioner meets this burden, the plaintiff is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 18. At step two, the ALJ determined that plaintiff has the following severe impairments: "mild lumbar levoscoliosis and mild degenerative joint space narrowing at L5-S1, obesity, a history of seizure disorder, anxiety disorder not otherwise specified, bipolar II disorder (provisional), attention-deficit hyperactivity disorder by history, and borderline intellectual functioning." Id. At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of any listing. Id.

Since plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairment affected her ability to work. The ALJ resolved that plaintiff had the

residual functional capacity ("RFC") to perform medium work so long as it was "simple work," could not have public contact, but could have occasional contact with her peers. Id. At step four, the ALJ found that plaintiff had no past relevant work. Tr. 23. At step five, the ALJ determined that jobs existed in significant numbers in the national and local economy which plaintiff could perform despite her impairments. Tr. 23-24. Accordingly, the ALJ concluded plaintiff was not disabled within the meaning of the Act. Tr. 24.

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) failing to find severe at step two her headaches, CTS, learning disabilities, and mental retardation; (2) failing to find plaintiff met or equaled Listing 12.05C; (3) failing to properly analyze medical evidence; (4) formulating an erroneous RFC; (5) relying on spurious VE testimony; and (5) wrongly evaluating plaintiff's credibility.

As a threshold matter, defendant concedes that the ALJ committed error in his decision, and that the case should therefore be remanded for further proceedings. Def.'s Br. 3-4. Defendant indicated that upon remand, the ALJ should: (1) further evaluate the medical opinions, including those of Drs. Sanford, Hennings, Oelheim, Parkman, O'Connell, and Lundblad; (2) reevaluate step two utilizing the special technique; (3) determine whether plaintiff meets or equals listing 12.05C;

reevaluate plaintiff's credibility; (4) formulate a new RFC pursuant to the relevant findings; and (5) if necessary, obtain new VE testimony. Id. Accordingly, the only issue before this court is whether to remand for further proceedings or for the immediate payment of benefits. For the reasons explained below, the case is remanded for immediate calculation and payment of benefits.

I. Step Two Error

Plaintiff argues that at step two, the ALJ erred by failing to find plaintiff's mental retardation, learning disabilities, CTS, and headaches to be severe impairments, which subsequently led to error at steps three and four. Pl.'s Opening Br. 9-16. Defendant does not dispute plaintiff's contention. The step two inquiry is the "*de minimus* screening device to dispose of groundless claims." Yuckert, 482 U.S. at 153-54. Step two impairments may not be found severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir 2005)(emphasis in original). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." See SSR 85-28, available at 1985 WL 56856, *3.

Additionally, because plaintiff made a claim for a mental

Page 7 - OPINION AND ORDER

impairment, the ALJ was required to make use of the "special psychiatric review technique." 20 C.F.R. § 404.1520a. Specifically, an ALJ must determine whether plaintiff had a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder. Id. § 1520a(b)&(c). The psychiatric review technique form ("PRTF") is typically used to comply with the regulation. Gutierrez v. Apfel, 199 F.3d 1048, 1050 (9th Cir. 2000).

This record includes a PRTF completed by consulting psychologist Dave Sanford Ph.D. in 2004, which concluded that a medical vocational "allowance" was appropriate for plaintiff based on her mental impairments. Tr. 293-310. However, the ALJ did not mention Dr. Sanford's opinion in his decision. More importantly, the ALJ did not provide any psychiatric review technique form of his own or any explanation of his equivalent findings. See Hoopai v. Astrue, 499 F.3d 1071, 1078-79 (9th Cir. 2007)(because the ALJ made specific findings as to each of the four functional areas as required under 20 C.F.R. § 404.1520a(e), failure to use a PRTF was not reversible error). Here, the ALJ committed clear error by completely omitting the form and

accompanying analysis. Failure to comply with the regulation is not harmless if the plaintiff has a "colorable claim of mental impairment." Keyser, 648 F.3d at 728. Defendant concedes that the ALJ erred in failing to document application of the technique in the decision. Def.'s Br. 3.

Plaintiff was diagnosed with "mental retardation" by Social Security Agency ("SSA") examining psychologist Dr. Marie Parkman as well as Dr. Sanford. Tr. 290, 293. Dr. Parkman noted that plaintiff's Full Scale IQ ("FSIQ") placed her in the "mild range of mental retardation," which was contributory to the doctor's opinion that she would require "at least a couple years" of treatment and skill training before she could be a candidate for competitive employment. Tr. 291. Dr. Sanford indicated plaintiff had mental retardation, anxiety-related disorders, and personality disorders which resulted in marked difficulties in maintaining concentration, persistence, or pace. Tr. 293, 303. Accordingly, substantial evidence supports a finding that plaintiff's mild mental retardation has more than a minimal effect on her ability to work, and should have been listed as a severe impairment at step two. Defendant does not dispute the contention.

In 2010, plaintiff was recognized as having learning disabilities by consultative psychologist Russell I. Oelheim, Ph.D. Dr. Oelheim noted that although plaintiff did not have a

learning disability in a "specific academic area," based on objective testing she nevertheless had learning disabilities in verbal knowledge and processing, reading comprehension and word identification, application of fundamentals of written language, math concepts, and basic mathematical computations. Tr. 387. Dr. Oelheim opined that as a result, plaintiff would face "very significant barriers . . . when on the job." Id. Thus, substantial evidence supports a finding that plaintiff had learning disabilities which should have been included as a severe impairment at step two. Again, defendant does not dispute plaintiff's contention.

The ALJ's failure to analyze all of plaintiff's mental impairments at step two (including the omission of the PRTF) was error. However, omissions at step two are often harmless error if step two is decided in plaintiff's favor. Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005). Here, step two was decided in plaintiff's favor, as the ALJ continued to subsequent steps of the sequential evaluation process. While the ALJ erred at step three, as explained below, the errors of omission at step two do not necessarily alter the outcome. Though the Ninth Circuit has not yet addressed the issue directly, courts within the Circuit have held that a diagnosis of mental retardation is not required to meet Listing 12.05C. Pedro v. Astrue, 849 F.Supp.2d 1006, 1010 (D.Or. March 23, 2011)(citing Maresh v. Barnhart, 438 F.3d 897,

Page 10 - OPINION AND ORDER

899 (8th Cir. 2006)). Thus, even if Drs. Parkman and Sanford had not diagnosed mental retardation, based on other substantial evidence, the step three analysis set forth below would remain unaltered. Accordingly, the ALJ's errors at step two were harmless.

II. Meets or Equals Listing 12.05C

Plaintiff contends that the ALJ failed to find plaintiff's mental impairments met equaled Listing 12.05C at step three.[1] Defendant concedes that further analysis and development of the record is required before a definitive finding can be made regarding Listing 12.05C. Def.'s Br. 6-8. For the following reasons, the court finds plaintiff meets Listing 12.05C.

A plaintiff satisfies Listing 12.05C demonstrating mental retardation/intellectual disability by showing (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. See 20 C.F.R.

---

[1] The current version of 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05C refers to "intellectual disability." The previous version of the regulation used the term "mental retardation," but was otherwise identical. The change was made in 2013 because the latter term has taken on negative connotations over time. See 78 Fed.Reg. 46499 (Aug. 1, 2013). However, for the sake of clarity and consistency with the briefs submitted in this case, the court opts to utilize the antiquated term "mental retardation" throughout this opinion.

Page 11 - OPINION AND ORDER

Part 404, Subpt. P, App. 1, § 12.05C; <u>Kennedy v. Colvin</u>, 738 F.3d 1172, 1174 (9th Cir. 2013). Defendant disputes only the first two of the three prongs. Def.'s Br. 6.

First, defendant contends that further development of the record is necessary regarding plaintiff's educational records in order to determine whether she had subaverage deficits in adaptive functioning prior to age 22. <u>Id.</u> Specifically, defendant argues that the record does not clarify whether her special education classes during high school were for behavior problems or intellectual disability, and that plaintiff's counseling notes from the time she was approximately eleven years old "make no mention of diagnoses related to any cognitive or intellectual disabilities." <u>Id.</u> However, although the majority of counseling notes are focused on plaintiff's family situation, a note indicates plaintiff's psychologist, Dr. Michael Knapp, described plaintiff as "seriously developmentally delayed" in 2013. Tr. 471. Also, a treating licensed clinical social worker noted "possible concerns with dev[elopmental] delay" in 2012. Tr. 512. Furthermore, Dr. O'Connell's first assessment of plaintiff occurred on April 21, 2003, when plaintiff was 21 years old. Tr. 261-76. He diagnosed borderline intellectual functioning, and indicated plaintiff had "significant intellectual difficulties . . . [and] placement in special education classrooms has been appropriate . . . ." Tr. 274. Overall, Dr. O'Connell's objective

Page 12 - OPINION AND ORDER

testing of then 21-year-old plaintiff reflected a broad range of subaverage deficits in adaptive functioning. Tr. 266-73. Thus, defendant's argument lacks merit.

Defendant further argues that plaintiff's failure to complete high school was due to her having a child rather than for reasons related to intellectual functioning. Def.'s Br. 6. Evidence of adaptive functioning deficits prior to age 22 may be circumstantial; including difficulties with reading and writing, attending special education classes, and dropping out of school. Pedro, 849 F.Supp.2d at 1011-12; Campbell v. Astrue, available at 2011 WL 444783, *17 (E.D.Cal. Feb. 8, 2011); Payne v. Astrue, 2010 WL 654319, *11 (D.Ariz. Feb. 23, 2010). While plaintiff may have ultimately abandoned high school in order to care for her daughter, the record contains a number of references to other times when plaintiff "dropped out" for periods of time, including eighth grade. Tr. 264. It was further noted plaintiff's attendance was only "intermittent" following eighth grade; moreover, plaintiff had to repeat both the first and second grades. Tr. 263-64. Additionally, the record indicates plaintiff attended special education classes throughout her time in school. Tr. 70-71, 263-64, 274, 373-74, 384. Although plaintiff's academic record is not presented in detail, her Woodcock-Johnson III tests indicate second to third grade reading, writing, and math scores; predominantly "below average." Tr. 386-87. Dr.

Page 13 - OPINION AND ORDER

O'Connell further found "very limited academic skills," including an "accurate" description of herself as "a person who cannot read." Tr. 273. Drs. Parkman and Oelheim made similar observations. Tr. 282-85, 383-84. Accordingly, there is ample evidence, both direct and circumstantial, that plaintiff had subaverage intellectual functioning and adaptive functioning deficits prior to age 22.

The second prong of 12.05C requires a valid verbal, performance, or full scale IQ score of 60 through 70. 20 C.F.R. Part 404, Subpt. P, App. 1. Defendant argues that because plaintiff's IQ scores varied over time, including scores greater than 71, additional medical evidence, and analysis thereof, is required in order to provide clarification. Def.'s Br. 6-8. The court disagrees. In 2003, Dr. O'Connell reported a verbal IQ ("VIQ") of 79, performance IQ ("PIQ") of 80, and full-scale IQ ("FSIQ") of 78. Tr. 267. In 2004, Dr. Parkman reported a VIQ of 73, PIQ of 70, and a FSIQ of 69. Tr. 282. The doctor indicated plaintiff's FSIQ put her in the "mild range of mental retardation." Tr. 291. Dr. Oelheim performed IQ testing again in 2010, which yielded a VIQ of 66, PIQ of 72, and FSIQ of 66.[2] Tr.

---

[2] The court notes that it could locate no evidence of record suggesting that any IQ testing was not valid. Further, neither party, nor the ALJ, indicated the validity of any test was in question. Accordingly, the court proceeded under the assumption that all of plaintiff's documented IQ tests were indeed valid. Further, there is no indication from the ALJ or defendant that any of the doctors' tests or opinions were anything less than

Page 14 - OPINION AND ORDER

383. The regulations require that for intelligence tests which yield multiple scores in a single test, courts must use the lowest of the scores. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00D(6)(c). Accordingly, for the purpose of this inquiry, plaintiff's scores can be distilled to 78 from Dr. O'Connell, 69 from Dr. Parkman, and 66 from Dr. Oelheim. Tr. 267, 282, 383.

Moreover, Ninth Circuit courts have interpreted the regulations to "prefer" the lowest score not just from a single test, but also from among multiple IQ tests. See Borders v. Colvin, available at 2014 WL 6901177, *5 (D.Or. December 3, 2014)(citing Ray v. Chater, 934 F.Supp. 347, 350 (N.D.Cal. July 23, 1996)). The Ninth Circuit has adhered to the rule even when the plaintiff's most recent IQ score did not qualify under Listing 12.05C. See Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987); see also Lewis v. Astrue, available at 2011 WL 1085254, *3 (D.Or. Feb. 15, 2011). Applying the rule to the facts, plaintiff's lowest qualifying score is 66 (for VIQ and FSIQ), which Dr. Oelheim assessed in 2010. Tr. 383. It should also be noted that Dr. Oelheim's 2010 result is the most recent of record, which even defendant concedes establishes it as "of the most import." Def.'s Br. 7. Therefore, plaintiff's IQ score

---

credible, or deserving of diminished weight.

satisfies the 12.05C criterion.[3]

Defendant does not dispute that plaintiff has established the final prong under 12.05C, as the ALJ's step two finding included other impairments resulting in "significant work-related limitation." Tr. 18; 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00A; Def.'s Br. 6. Specifically, the ALJ found that plaintiff had the severe impairments of mild lumbar levoscoliosis, degenerative joint space narrowing at L5-S1, obesity, anxiety disorder, bipolar II disorder, and ADHD. Tr. 18. As previously discussed, the ALJ should also have included the additional impairments of mild mental retardation and learning disabilities. Therefore, as all of the prerequisites are supported by substantial evidence in the record, the court finds plaintiff meets Listing 12.05C. The ALJ's contrary finding was legal error.

III. Remand

Because the step three error is dispositive, the court declines to address the remaining contentions of the parties.

From the outset, the parties agreed that remand was necessary. The court has discretion to reverse the Commissioner's

---

[3] Defendant further argues that "the record contains no medical opinion that [p]laintiff's impairments meet or medically equal the severity of a listed impairment." Def.'s Br. 7. The argument fails for two reasons. First, an explicit opinion that plaintiff meets a listing is not a prerequisite to meeting a listing under the Act. Second, Dr. Sanford nevertheless indicated a medical vocational allowance was appropriate for plaintiff. Tr. 310.

Page 16 - OPINION AND ORDER

final decision and remand for further proceedings, or simply to award benefits. Harman v. Apfel, 211 F.3d 1172, 1177 (9th Cir. 2000). Whether to remand a case for further proceedings depends on the likely utility of such proceedings. Id. Here, the record is fully developed, and substantial evidence supports a finding that plaintiff meets Listing 12.05C. No further development of the record will change whether she meets the listing, as any potential new IQ test result cannot displace plaintiff's qualifying scores. See Fanning, 827 F.2d at 633.

Insofar as defendant nevertheless maintains that "the record does not support the [p]laintiff is unable to perform any work," the argument is unavailing. Def.'s Br. 5. The listings set forth in 20 C.F.R. Part 404, Subpt. P, App. 1 were "designed to operate as a presumption of disability that makes further inquiry unnecessary." Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Conditions contained in the listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995).

Thus, as plaintiff meets the listing, she is found presumptively disabled under the Act. Holohan v. Massanari, 246 F.3d 1195, 1211 (9th Cir. 2001). Accordingly, remand for immediate calculation and award of benefits is appropriate.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

IV. Conclusion

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for immediate calculation and award of SSI benefits.

IT IS SO ORDERED.

Dated this 5th of May 2015.

_____
Ann Aiken
United States District Judge